**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JOHN HAYNES,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| **TROY UNIVERSITY,** | ) | **JURY TRIAL DEMANDED** |
| **JACK STOCKDALE DAWSON,** | ) | |
| **BRIAN BLACKMON,** | ) | |
| **DAYNE BROWN,** and | ) | |
| **JAMAAL SMITH,** | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT

---

COMES NOW Plaintiff John Haynes and files his complaint against Troy University, Jack Stockdale Dawson, Brian Blackmon, Dayne Brown, and Jamaal Smith and states as follows:

### INTRODUCTION

1.      John Haynes started his freshman year at Troy University as a walk-on for the football team. Almost immediately, he began experiencing sexual harassment and bullying from his suitemate, Defendant Jack Dawson. The abuse ranged from verbal harassment, which included sexual statements and homophobic slurs, to molestation and violence, ultimately culminating with the forced sodomy of Plaintiff with a pool cue.

2.      Throughout the abuse, John sought help from the Defendants, including Coach Blackmon, Coach Brown, and Coach Smith [collectively referred to as "the Coaches"]. Instead of disciplining Defendant Dawson, the Coaches told John that he was responsible for ending his own abuse. The Coaches implied that John was being perceived as "homosexual," and that this

perception was the reason why Defendant Dawson was abusing him. Rather than address his abuser, the Coaches told John that he needed to physically fight Defendant Dawson to end the sexual harassment. The Coaches also blamed John for bringing on the abuse upon himself because, in their words, "guys don't like that gay shit."

3.      John never received any intervention from the Coaches or any Defendant. A few months into the abuse, Coach Blackmon received a list of all the incidents of abuse John suffered from Defendant Dawson. Instead of disciplining Defendant Dawson for his actions, both John and Defendant Dawson were suspended from the football team. John unenrolled at Troy University shortly thereafter.

PARTIES

4.      Plaintiff John Haynes is over the age of 19 and resides in Suwanee, Forsyth County, Georgia. At all times relevant to this action, John was a student-athlete and a player for Troy University's football team.

5.      Defendant Troy University is a public university in Troy, Alabama and is a recipient of federal funds within the meaning of 20 U.S.C § 1681(a).

6.      Defendant Jack Stockdale Dawson is over the age of 19 and is a resident of Calhoun County, Alabama. At all times relevant to this action, Dawson was a student and player on Troy University's football team.

7.      Defendant Coach Brian Blackmon is over the age of 19 and is a resident of Seminole County, Florida. At all times relevant to this action, Blackmon was the Special Teams Coordinator for Troy University's football team.

2

8.    Defendant Coach Dayne Brown is over the age of 19 and is a resident of Pike County, Alabama. At all times relevant to this action, Brown was a Special Teams Coordinator for Troy University's football team.

9.    Defendant Coach Jamaal Smith is over the age of 19 and is a resident of Pike County, Alabama. At all times relevant to this action, Smith was the Director of Player Development for Troy University's football team.

## JURISDICTION & VENUE

10.    This Court has original, subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this litigation involves matters of federal law, specifically claims made under Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1681 *et seq.*, and the Equal Protection Clause and Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution, brought pursuant to 42 U.S.C § 1983.

11.    This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as it forms part of the same case or controversy stemming from the allegations that form the basis of the federal claims.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as all relevant facts giving rise to this case and damages sustained by Plaintiff occurred in Troy, Alabama, which are part of the United States District Court for the Middle District of Alabama.

## FACTS

13.    In late Spring of 2020, John narrowed his college choices to Bowling Green University and Troy University. Both schools had offered him a preferred walk-on position with the football team.

14.     Around that time, John and his parents participated in a video call with Coach Brian Blackmon and Head Football Coach Chip Lindsey, during which the coaches referred to John as a "Troy kind of guy."

15.     John enrolled at Troy University. Coach Blackmon and Coach Lindsey informed John that they recruited a punter from Australia named Jack Dawson, who was to be John's suitemate. The coaches told John and his parents that they were hoping that John could help Defendant Dawson adjust to the U.S. and provide him with somewhere to stay during the holiday season.

16.     John arrived at Troy University on or around July 6, 2020 and began football conditioning later that month.

17.     Defendant Dawson arrived at Troy University in August 2020 and almost immediately began harassing John. Dawson consistently yelled and banged on John's door while he was sleeping, both early in the morning and late at night throughout the semester. On at least one occasion, Dawson came back to the dorm room drunk and broke a beer bottle on John's door.

18.     Near the end of August, John contracted Covid-19. John went home to isolate. While home, Mr. Haynes and Mrs. Haynes noticed that John was beginning to experience depression and anxiety due to the treatment by Dawson and other teammates. Mr. Haynes spoke to Dr. DiChiara, one of the football team's doctors, who then prescribed John antidepressant and anti-anxiety medication. John had never had depression or anxiety before enrolling at Troy University.

19.     In September 2020, Coach Blackmon called John and told him to report he was symptom-free of Covid-19, even if he was not, so that he could return to football practice. John returned to school on September 11, 2020 despite still having symptoms of Covid-19.

4

20.     During October 2020, John was taking a make-up math exam in his dorm room. Dawson entered John's room and exposed his penis close to John's face and stated, "suck my dick." After John made Dawson leave, Dawson banged loudly on John's door and yelled sexual statements and homophobic slurs during the remainder of John's exam.

21.     During October 2020, John received a "snapchat" (a video message that eventually deletes itself) that had been sent to multiple other students. The video was of Dawson urinating on the back of John's car.

22.     During October 2020, Dawson broke into John's locked dorm room while John was in bed. Dawson again approached John and exposed his penis to him. Dawson told John to "suck [his] dick" and stated homophobic slurs.

23.     During October 2020, John was in the dorm common area laying on the couch. Dawson approached John from behind and touched John's head with his penis.

24.     During October 2020, Dawson broke into John's locked room and exposed his penis to John. John told Dawson to get out. Dawson then rubbed his penis on the bed sheets and told John to "suck [his] dick." Each time Dawson exposed himself to John he directed homophobic slurs at him.

25.     During their first semester at Troy, Dawson broke into John's locked dorm room on a regular basis and harassed John.

26.     In October 2020, Dawson also harassed John on the football field during practice. Dawson tackled John to the ground multiple times during practice, despite tackling not being part of the drills. John told Dawson to get off him and to stop. He would not and continued to randomly tackle John, laughing and calling him a "pussy." During these occasions, Coach Brown was watching. On many occasions during stretching, Dawson would wait until John was in the

hamstring stretch (standing with legs apart and hands on the ground) and come up behind John and "hump" him by thrusting his groin into John.

27.     During October 2020, Dawson stole John's car keys and hid them from John on multiple occasions.

28.     John continued to experience increasing depression and anxiety because of Dawson's harassment. He became increasingly despondent. Often, John would call his parents multiple times a day to tearfully complain about Dawson. John's parents reached out to a church near Troy University in search of support for John outside of the football program.

29.     John's father told John to set up a meeting between Coach Blackmon and Coach Brown and the Hayneses after the first game of the season.

30.     On or about October 10, 2020, Troy University had its first home football game. John spoke to Coach Brown and Coach Blackmon at practice a few days before the game and asked if they could meet with John's parents after the game. John intended to have his parents talk about Dawson's bullying with the coaches. The Hayneses waited at least 30 minutes to an hour outside the stadium. John tried to contact the coaches several times but was unable to reach them. The coaches never showed up to the meeting.

31.     On or about October 17, 2020, John and his parents again arranged to meet with the coaches to discuss Dawson's harassment of John. John tried to contact Coach Brown several times but received no answer. Again, the coaches never showed up to the requested meeting.

32.     On or about October 17, 2020, John was pressured by Dawson and other players to drink at a bar. John was filmed being drunk by Dawson and other players, who then left John alone outside at the bar. As a result, John texted his mother "need you" at 1:57 A.M. John subsequently lost his phone.

33.     The next day, Coach Brown and Coach Blackmon met with John and asked, "why would you text your mom at 3 in the morning?" They told John never to text his mother at 3 A.M. again, even if he was on his deathbed. John told the coaches that he was being bullied and taken advantage of by Dawson and that he cannot stand it. Coach Blackmon told John to "stop fitting in with them and being taken advantage by all of them." The coaches never asked for any specifics of what John was going through and failed to offer any help.

34.     In October 2020, the Troy University football team played a home game. John's parents were in attendance, and Dawson saw that John's father was in a wheelchair. Dawson laughed and mocked John's father, and repeatedly told John that he was going to put John in a wheelchair like his father.

35.     On or about October 20, 2020, John asked Coach Brown to speak with him privately. John told Coach Brown that he was being bullied by Dawson and that he can no longer tolerate it. In response, Coach Brown said, "Do not tell anyone that I told you this, but the way to handle a bully is to beat their ass. You should beat Jack Dawson up so you can get the message across that you are done with him and will not take any more shit." Coach Brown did not express any other interest in John's situation and refused to intervene on John's behalf. Coach Brown did not offer any other way for John to protect himself from Dawson other than with violence. Coach Brown walked away.

36.     Near the end of October 2020, Coach Smith called John and told him that he knew John was getting picked on and that John "needed to stop letting the kids take advantage" of him. He also told John "to stop giving everyone rides," because it was contributing to why he was getting abused. During this conversation, Coach Smith also told John that, "during college, everybody drinks. Do not let those kids take advantage of you and get you drunk like that again."

37.     On October 24, 2020, John was in the players' lounge, laying on the floor on his stomach, watching a football game on his phone.

38.     Suddenly, John felt excruciating pain in his anus. Dawson had snuck up behind him with a pool cue and shoved the point of it up into his anus. John clutched at his backside. Dawson and the other players in the lounge laughed at John's pain. John then received a snapchat message notification from one of the players. John got up and left the room angry, humiliated, and injured. Later, John opened the snapchat message and saw it was a video of Dawson shoving the pool cue into his anus as others watched and laughed.

39.     John's anus and rectum have hurt ever since the incident. Following this incident, John began experiencing rectal bleeding that continued for five months.

40.     Starting in November 2020, Dawson and another player named Jack Martin began grabbing John's genitals, usually more than once a day, while in the football facility.

41.     On or about November 13, 2020, Dawson and another player named Kyle Toole attempted to throw John in a pool fully clothed. John was grasped by his shoulders and his feet and was dropped on the hard ground, causing him injury.

42.     On or about November 18, 2020, John's teammates pressured him to lay on another teammate's bed while they filmed him. The teammates then sent this video to the owner of the bed, Cameron Williams. Williams retaliated by stealing John's prescription medicine. While John was attempting to get his medication back from Williams, Dawson hit Williams' door so hard that it cracked the frame. John was then called into a meeting with Coach Blackmon, Coach Smith, and Coach Brown. John told the Coaches his side of the story and again explained the bullying that he was enduring. In response, Coach Smith told him: "John, you gotta stop doing all this gay shit like getting into bed with other guys and being so nice.  Guys don't like that gay shit.  That's why Jack

and others are bullying you so you just gotta beat Jack's ass.  You don't need no help. He's a stick. You also gotta stop taking them places." The coaches also blamed John for the destruction to the door.

43.     On or about November 19, 2020, John found that his car windshield had sustained three holes and a crack.

44.     Near the end of November 2020, the Hayneses requested a meeting with all three Coaches. Mr. Haynes and Mrs. Haynes asked Coach Smith why the coaches have ignored John's pleas for help with Dawson's bullying. Coach Smith responded that John was "getting in other players' beds a lot" and implied this was distasteful and shameful. Coach Smith also stated that John is "too nice" and "is letting other players take advantage of him." He also told the Hayneses that John is doing some "other things" and that John needs to let his parents know what those things are.

45.     During the meeting, Mr. Haynes and Mrs. Haynes gave Coach Smith specific examples of the bullying, such as Dawson exposing himself to John, banging on John's door, and breaking beer bottles on his door in the middle of the night. Coach Smith argued that John was being "picked on" but not bullied, that John "needs to kick Jack Dawson's ass," and that Dawson "is just a stick" and John can "beat the hell out of him." Mr. Haynes told Coach Smith that John does not believe in fighting.

46.     Mr. Haynes and Mrs. Haynes next arranged to meet with Coach Smith after the football game on Saturday, November 21, 2020.

47.     On November 21, 2020, Mr. Haynes and Mrs. Haynes waited for Coach Smith to show up after the football game. John also tried to contact him repeatedly but received no response.

Coach Smith never arrived. Later that night, Coach Smith called John and stated that he did not show up, because he was tired and upset by the team's loss.

48.     Near the end of November 2020, John discussed his desire to switch dorm rooms with his dorm RA and one of the Coaches (either Coach Smith or Coach Blackmon). John told the coach that he desired to move because of Dawson's bullying. John was told that he couldn't transfer rooms. John was not allowed to move despite the Hayneses' stated willingness to pay for a private room.

49.     Throughout the fall semester, John continued to be relentlessly pressured by his teammates to say things and do things at their bidding while they videoed him. John was threatened by violence if he refused to do what he was told on camera.

50.     On or about December 4, 2020, Dawson sat on John while he was sitting on a sofa. Dawson refused to move. Dawson then forcefully slapped John. John and Dawson began fighting, resulting in injury to John. After this event, John was afraid to sleep in his dorm and stayed the night at another player's dorm room.

51.     On or about December 6, 2020, Dawson approached John during team weightlifting and said that he "will do it again," referring to hitting John. After practice that day, John spoke tearfully to Coach Rod Crayton about the harassment he was experiencing from Dawson. John told Coach Crayton that he did not know who he can talk to for help because the coaches have ignored his pleas and that he intended to quit the team and leave Troy University. Coach Crayton responded that he would inform Coach Rusty Whitt about the harassment.

52.     On or about December 7, 2020, Coach Smith called a meeting with John and Coach Blackmon to talk about the fight with Dawson. Coach Smith and Coach Blackmon accused John of having been drinking at the time of the fight. Coach Smith gave John a piece of paper to write

down everything that Dawson had done to him. John complied. Coach Blackmon was angered by John's list and indicated he was done dealing with this "3rd grade shit."

      53.     Mr. Haynes talked to Coach Smith on the morning of December 7, 2020 and requested that Coach Blackmon, Coach Brown, and Coach Smith meet with John and Mr. and Mrs. Haynes. Mr. Haynes and Mrs. Haynes arrived at the football facility to discuss the bullying with the coaches. Only Coach Smith attended the meeting. Coach Smith tried to dominate the meeting and deflect any conversation about the bullying. Coach Smith tried to frame John as partially responsible for incurring the bullying. Coach Smith continually made comments implying that John was homosexual and that fact somehow made John complicit or partly responsible in what had happened to him. Coach Smith told Mr. Haynes and Mrs. Haynes many times that there were videos of John in the beds of other players, and John needed "to have a good reason explaining his way out of this at some point in the future." Coach Smith stated, "I just want John to realize this stuff is out there and some people could infer things." Coach Smith refused to talk about any of the incidents of bullying John had listed out. Regarding the pool cue assault, Coach Smith said that it was just "horseplay."

      54.     Coach Smith then told Mr. Haynes and Mrs. Haynes that John was suspended from the team.

      55.     On or about December 9, 2020, Mrs. Haynes asked Coach Smith what the football program and the University Administration were going to do in addressing the pool cue assault. After reviewing a security video of the assault, Coach Smith denied that it was anything more than "horseplay" and indicated no action would be taken against Defendant Dawson or anyone else.

      56.     On or about December 9, 2020, Mr. Haynes and Mrs. Haynes spoke to Dean Herbert Reeves about what happened to John.

11

57.    On or about December 10, 2020, John reported the assault to Troy University Campus Police.

58.    It became clear to John that Coach Blackmon, Coach Brown, and Coach Smith, as well as other leadership at Troy University, were not going to implement any precautions or actions to prevent further sexual harassment and bullying of John. In fact, the Coaches' statements and inaction indicated that they blamed John for bringing the abuse upon himself by way of being perceived by teammates as being homosexual. After receiving a concrete list of all the incidents of abuse by Dawson, instead of taking disciplinary action against Dawson, relocating Dawson to other student housing, or implementing a more protective sexual harassment and assault policy, the Coaches suspended both John and Dawson from the team.

59.    Based on the deliberate indifferent response by Coach Blackmon, Coach Brown, and Coach Smith to the known sexual harassment John had endured, John felt unsafe remaining at Troy University.

60.    On or about December 14, 2020, John decided to withdraw from Troy University.

61.    On every occasion of intimidation, sexual harassment, and gender-based harassment by Dawson, John told Dawson that the misconduct was unwelcome and that he must stop.

62.    Despite Coach Blackmon, Coach Brown, Coach Smith, and other individuals on the coaching staff knowing that John was being bullied and sexually assaulted by Dawson, no action was taken to discipline Dawson or to stop the bullying and assault from continuing.

63.    John was deprived of a safe school environment as a result of Dawson's bullying and Coach Blackmon's, Coach Brown's, and Coach Smith's decision to allow the bullying to continue.

64.    John was deprived of educational opportunities as a result of Dawson's bullying and Coach Blackmon's, Coach Brown's, and Coach Smith's decision to allow the bullying to continue. These deprivations included, but are not limited to, the loss of a safe school environment, the loss of ability to effectively pursue studies, and the loss of other educational opportunities.

65.    Upon information and belief, neither Coach Brown, Coach Blackmon, Coach Smith, nor any other employee of Troy University undertook any investigation into the bullying that John and his parents had reported, nor was Dawson ever disciplined for his actions.

66.    Upon information and belief, John never received any notice of Title IX or his right to make a grievance regarding Dawson's sexual harassment. Instead, Coach Brown, Coach Blackmon, and Coach Smith instructed John that his only recourse was to engage in violence with Dawson.

67.    Upon information and belief, Troy University did not change any of its policies or provide any additional training to employees after the events of sexual harassment and bullying.

68.    Upon information and belief, Coach Brown, Coach Smith, and Coach Blackmon believed John was being sexually harassed because he was homosexual, and they chose not to intervene on behalf of John because of their perception of John's sexuality.

**COUNT I**
**Violation of Title IX, 20 U.S.C. § 1681**
(Defendant Troy University)

69.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).

70.    Troy University is an educational institution, is the recipient of federal financial assistance, and is subject to private causes of action under Title IX.

71.     Title IX liability arises when a school district official, who is an appropriate person with authority to take corrective action in response to student-on-student sexual harassment, has sufficient actual notice of the sexual harassment but responds thereto with deliberate indifference and acts unreasonably in light of known circumstances.

72.     Troy University was on notice of misconduct and discrimination in the form of intimidation, sexual harassment, and gender-based harassment of Plaintiff, including both before and after Defendant Dawson assaulted Plaintiff with a pool cue.

73.     By their actions and inactions, Defendants created an environment in which such misconduct was tolerated, thus encouraging continued and repeated intimidation, sexual harassment, and gender-based harassment thus proximately causing injury to Plaintiff.

74.     Upon information and belief, Troy University, through its employees, namely, the Coaches, was also on actual notice of intimidation, gender-based harassment, and sexual harassment within the Troy football program prior to the assault of Plaintiff.

75.     The Coaches had actual knowledge and had the authority to investigate and take meaningful action to end the discrimination and sexual harassment but failed to do so.

76.     The discrimination, intimidation, and sexual harassment occurring within Troy University's football team effectively barred Plaintiff access to educational opportunities, including, but not limited to, attending school and football team activities without the fear, embarrassment, intimidation, and mental anguish associated with pervasive and continuing sexual harassment.

77.     Plaintiff suffered repeated student-on-student intimidation and sexual harassment, which is considered discrimination based on sex and is prohibited by Title IX.

78.     The gender-based harassment, intimidation, and sexual harassment suffered by Plaintiff was severe, pervasive, and objectively offensive as required to state a claim under Title IX.

79.     The gender-based harassment, intimidation, and sexual harassment suffered by Plaintiff created a hostile environment at Troy University.

80.     By its actions and inactions, Troy University acted with deliberate indifference toward Plaintiff's right to a safe and secure educational environment, thus materially impairing Plaintiff's ability to pursue his education at Troy University in violation of the requirements of Title IX.

81.     Specifically, Troy University violated Title IX by:

   a.  choosing to take no action to protect Plaintiff, despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent discrimination, intimidation, gender-based harassment, and sexual harassment occurring within the football team and providing implicit approval, encouragement, and ratification of continued misconduct;

   b.  failing to take appropriate action against Defendant Dawson for misconduct occurring before and following the pool cue assault of Plaintiff;

   c.  failing to provide policy or training for its students, employees, faculty members, coaches, or volunteers about sexual harassment and assault, or mandatory reporting, thereby creating a climate where such misconduct was tolerated and encouraged to continue without consequence;

   d.  instructing Plaintiff that engaging in violence was the only means to end the sexual harassment he suffered from Defendant Dawson;

   e.  being deliberately indifferent to and failing to take action on known discrimination, intimidation, gender-based harassment, and sexual harassment suffered by Plaintiff prior to the pool cue assault and after the pool cue assault;

   f.  attributing blame to Plaintiff due to the coaches' and students' perception of him being homosexual;

g.  being deliberately indifferent to the known allegations of discrimination, intimidation, gender-based harassment, and sexual harassment occurring and the unique dangers to younger male athletes;

h.  creating and fostering a climate which tolerated discrimination, intimidation, gender-based harassment, and sexual harassment occurring, including assault within the football team, or, alternatively, being deliberately indifferent thereto;

i.  failing to conduct their own internal investigation into the assault and other allegations of misconduct and maintaining a policy of refusing to conduct such internal investigations;

j.  through other actions, inactions, and deliberate indifference.

82.  As a direct and proximate result of said Defendant's actions and inactions, Plaintiff has been deprived of educational opportunities and has sustained and continues to sustain physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern.

83.  Plaintiff is entitled to an award of compensatory damages, attorneys' fees, costs, and interest against Defendants, each of them collectively or separately and severally.

## COUNT II
## Violation of Title IX, 20 U.S.C. § 1681 — Gender/Sex Discrimination
(Defendant Troy University)

84.  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).

85.  Troy University is an educational institution, is the recipient of federal financial assistance, and is subject to private causes of action under Title IX.

86.  Title IX liability arises when a school district official, who is an appropriate person with authority to take corrective action in response to student-on-student sexual harassment, has

sufficient actual notice of the sexual harassment but responds thereto with deliberate indifference and acts unreasonably in light of known circumstances.

87.    "It is impossible to discriminate against a person for being homosexual . . . without discriminating against that individual based on sex." *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1741 (2020). This is because "homosexuality and transgender status are inextricably bound up with sex." *Id*. at 1742. "[T]o discriminate on these grounds requires a [federal funding recipient] to intentionally treat individual [students] differently because of their sex." *Id*. at 1741.

88.    A school cannot "[s]ubject any person to separate or different rules of behavior, sanctions, or other treatment" on the basis of sex. 34 C.F.R. § 106.31(b)(4).

89.    The Coaches believed Plaintiff to be homosexual, or at the very least, to possess effeminate attributes.

90.    The Coaches affirmatively did not intervene with Defendant Dawson's sexual harassment due to their belief that Plaintiff was not acting like a "man."

91.    In fact, the Coaches blamed Plaintiff for the harassment he was receiving from Defendant Dawson because of their perception of Plaintiff's sexual orientation.

92.    In addition to failing to respond adequately to known sexual harassment, the Coaches insisted that the only means to end the harassment is for Plaintiff himself to resort to violence against Defendant Dawson.

93.    The Coaches attempted to dismiss and downplay the sexual harassment and abuse Plaintiff was experiencing with the intent to discriminate on the basis of Plaintiff's sex and perceived sexual orientation.

94.     Troy University was on notice of misconduct and discrimination in the form of intimidation, sexual harassment, and gender-based harassment with Defendant Dawson prior to the pool cue assault, as well as after the pool cue assault.

95.     By their actions and inactions, Defendants created an environment in which such misconduct was tolerated, thus encouraging continued and repeated intimidation, sexual harassment, and gender-based harassment and thus proximately causing injury to Plaintiff.

96.     Upon information and belief, Troy University, through its employees, namely, the Coaches, was also on actual notice of intimidation, gender-based harassment, and sexual harassment within the Troy football teams prior to the assault of Plaintiff.

97.     The Coaches had actual knowledge and had the authority to investigate and take meaningful action to end the discrimination and sexual harassment but failed to do so.

98.     The discrimination, intimidation, and sexual harassment occurring within Troy University's football team effectively barred Plaintiff access to educational opportunities, including, but not limited to, attending school and football team activities without the fear, embarrassment, intimidation, and mental anguish associated with pervasive and continuing sexual harassment.

99.     Plaintiff suffered repeated student-on-student intimidation and sexual harassment, which is considered discrimination based on sex and is prohibited by Title IX.

100.    The gender-based harassment, intimidation, and sexual harassment suffered by Plaintiff was severe, pervasive, and objectively offensive as required by Title IX.

101.    The gender-based harassment, intimidation, and sexual harassment suffered by Plaintiff created a hostile environment at Troy University.

102.    By its actions and inactions, Troy University acted with deliberate indifference toward Plaintiff's right to a safe and secure educational environment, thus materially impairing Plaintiff's ability to pursue his education at Troy University in violation of the requirements of Title IX.

103.    Specifically, Troy University violated Title IX by:

a.    choosing to take no action to protect Plaintiff, despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent discrimination, intimidation, gender-based harassment, and sexual harassment occurring within the football team and providing implicit approval, encouragement, and ratification of continued misconduct;

b.    failing to take appropriate action against Defendant Dawson for misconduct occurring before and following the pool cue assault of Plaintiff;

c.    failing to provide policy or training for its students, employees, faculty members, coaches, or volunteers about sexual harassment and assault, or mandatory reporting, thereby creating a climate where such misconduct was tolerated and encouraged to continue without consequence;

d.    instructing Plaintiff that engaging in violence was the only means to end the sexual harassment he suffered from Defendant Dawson;

e.    being deliberately indifferent to and failing to take action on known discrimination, intimidation, gender-based harassment, and sexual harassment suffered by Plaintiff prior to the pool cue assault and after the pool cue assault;

f.    attributing blame to Plaintiff due to the coaches' and students' perception of him being homosexual;

g.    being deliberately indifferent to the known allegations of discrimination, intimidation, gender-based harassment, and sexual harassment occurring and the unique dangers to younger male athletes;

h.    creating and fostering a climate which tolerated discrimination, intimidation, gender-based harassment, and sexual harassment occurring, including assault within the football team, or, alternatively, being deliberately indifferent thereto;

    i.     failing to conduct their own internal investigation into the assault and other allegations of misconduct and maintaining a policy of refusing to conduct such internal investigations; and

    j.     through other actions, inactions, and deliberate indifference.

104.    As a direct and proximate result of said Defendant's actions and inactions, Plaintiff has been deprived of educational opportunities and has sustained and continues to sustain physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern.

105.    Plaintiff is entitled to an award of compensatory damages, attorneys' fees, costs, and interest against Defendants, each of them collectively or separately and severally.

**COUNT III**
**Violation of the Equal Protection Clause under 42 U.S.C. § 1983 — Sexual Harassment**
(Defendants Blackmon, Brown, and Smith
in their individual capacities)

106.    The Equal Protection Clause of the Fourteenth Amendment states that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. Amend. XIV, § 1.

107.    A government official may be liable under section 1983 for a violation of the Equal Protection Clause if the official was deliberately indifferent to known sexual harassment.

108.    The inappropriate intimidation, gender-based harassment, and sexual harassment toward Plaintiff occurred on school property and while Defendant Dawson was under the authority and control of Troy University and Troy University employees, the Coaches.

109.    The Coaches had actual knowledge of the sexual harassment Defendant Dawson inflicted upon Plaintiff.

110.    Defendants Blackmon, Brown, and Smith, each of them collectively or separately and severally, violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth

Amendment by doing nothing to protect him from gender-based harassment, intimidation, and sexual harassment.

111.     In addition to failing to respond adequately to known sexual harassment, Defendants insisted that the only means to end the harassment is for Plaintiff himself to resort to violence against Defendant Dawson.

112.     As a direct and proximate result of said Defendants' actions and inactions, Plaintiff has sustained and continues to sustain physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern.

113.     Plaintiff is entitled to an award of compensatory damages, attorneys' fees, costs, and interest against Defendants, each of them collectively or separately and severally.

### COUNT IV
### Violation of the Equal Protection Clause under 42 U.S.C. § 1983 — Gender/Sex Discrimination
(Defendants Blackmon, Brown, and Smith
in their individual capacities)

114.     The Equal Protection Clause of the Fourteenth Amendment states that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. Amend. XIV, § 1.

115.     A government official may be liable under section 1983 for a violation of the Equal Protection Clause if the official was deliberately indifferent to known sexual harassment.

116.     The Coaches believed Plaintiff to be homosexual.

117.     The Coaches affirmatively did not intervene with Defendant Dawson's sexual harassment due to their belief that Plaintiff was not acting like a "man."

118.     In fact, the Coaches blamed Plaintiff for the harassment he was receiving from Defendant Dawson because of their perception of Plaintiff's sexual orientation.

119.    In addition to failing to respond adequately to known sexual harassment, the Coaches insisted that the only means to end the harassment is for Plaintiff himself to resort to violence against Defendant Dawson.

120.    The Coaches attempted to dismiss and downplay the sexual harassment and abuse Plaintiff was experiencing with the intent to discriminate on the basis of Plaintiff's sex and perceived sexual orientation.

121.    The inappropriate intimidation, gender-based harassment, and sexual harassment toward Plaintiff occurred on school property and while Defendant Dawson was under the authority and control of Troy University and Troy University employees, the Coaches.

122.    The Coaches had actual knowledge of the sexual harassment Defendant Dawson inflicted upon Plaintiff.

123.    Defendants Blackmon, Brown, and Smith, each of them collectively or separately and severally, violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment by doing nothing to protect him from gender-based harassment, intimidation, and sexual harassment.

124.    As a direct and proximate result of said Defendants' actions and inactions, Plaintiff has sustained and continues to sustain physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern.

125.    Plaintiff is entitled to an award of compensatory damages, attorneys' fees, costs, and interest against Defendants, each of them collectively or separately and severally.

**COUNT V**
**Violation of Substantive Due Process under 42 U.S.C. § 1983 — Bodily Integrity**
(Defendants Blackmon, Brown, and Smith
in their individual capacities)

126.    Section 1 of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV, § 1.

127.    A government official may be liable under section 1983 for a violation of Substantive Due Process if the government official's actions or inactions were arbitrary or conscience shocking.

128.    The inappropriate intimidation, gender-based harassment, and sexual harassment toward Plaintiff occurred on school property and while Defendant Dawson was under the authority and control of Troy University and Troy University employees, the Coaches.

129.    The Coaches had actual knowledge of the sexual harassment Defendant Dawson inflicted upon Plaintiff.

130.    The Coaches believed Plaintiff to be homosexual, or at the very least, to possess effeminate attributes.

131.    The Coaches affirmatively did not intervene with Defendant Dawson's sexual harassment due to their belief that Plaintiff was not acting like a "man."

132.    In fact, the Coaches blamed Plaintiff for the harassment he was receiving from Defendant Dawson because of their perception of Plaintiff's sexual orientation.

133.    In addition to failing to respond adequately to known sexual harassment, the Coaches insisted that the only means to end the harassment is for Plaintiff himself to resort to violence against Defendant Dawson.

23

134.    The Coaches attempted to dismiss and downplay the sexual harassment and abuse Plaintiff was experiencing with the intent to discriminate on the basis of Plaintiff's sex and perceived sexual orientation.

135.    The Coaches failed to prevent or stop Defendant Dawson's intimidation, gender-based harassment, and sexual harassment toward Plaintiff.

136.    The Coaches also instructed Plaintiff to violently assault Defendant Dawson as the means to end Defendant Dawson's intimidation, gender-based harassment, and sexual harassment.

137.    As a result of these actions and inactions, the Coaches violated Plaintiff's Constitutional right to bodily integrity under the Fourteenth Amendment.

138.    As a direct and proximate result of Defendant Blackmon's, Brown's, and Smith's actions and inactions, Plaintiff has sustained and continues to sustain physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern.

139.    Plaintiff is entitled to an award of compensatory damages, attorneys' fees, costs, and interest against Defendants, each of them collectively or separately and severally.

<u>**COUNT VI**</u>
<u>**Negligence**</u>
(Defendants Blackmon, Brown,
and Smith in their individual capacities)

140.    The Coaches owed a duty to students on Troy University's football team, including Plaintiff, to act in a reasonably prudent manner when executing their duties as employees at Troy University to supervise, discipline, suspend, and/or expel students who pose a real and immediate danger to their fellow students, and to protect its students from harassment, intimidation, and sexual assault as required by Troy University policy.

141.    The Coaches negligently, mistakenly, and in bad faith acted beyond their authority in failing to adhere to the duties required of them and listed and outlined in Troy University's policy by failing to supervise, intervene, discipline, suspend, and/or expel Defendant Dawson, despite their knowledge of Defendant Dawson's habits and practices of continuously and repeatedly bullying, sexually harassing, using homophobic slurs, ridiculing, and assaulting Plaintiff.

142.    As a direct and proximate result of the negligence of these Defendants, Plaintiff has sustained and continues to sustain physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern.

143.    Plaintiff is entitled to an award of compensatory damages, attorneys' fees, costs, and interest against Defendants, each of them collectively or separately and severally.

**COUNT VII**
**Recklessness/Wantonness**
(Defendants Blackmon, Brown,
and Smith in their individual capacities)

144.    The Coaches owed a duty to students on Troy University's football team, including Plaintiff, to act in a reasonably prudent manner when executing their duties as employees at Troy University to supervise, discipline, suspend, and/or expel students who pose a real and immediate danger to their fellow students, and to protect its students from harassment, intimidation, and assault as required by Troy University's policy.

145.    The Coaches recklessly and/or wantonly acted in bad faith and beyond their authority by breaching their duties to Plaintiff by failing to supervise, discipline, suspend, and/or expel the student-bullies in compliance with their required duties as teachers and principals, and as required by Troy University's policy, despite their knowledge of Defendant Dawson's and other

students' habitual practice of sexually harassing, bullying, using homophobic slurs, ridiculing, and assaulting Plaintiff.

146.     The Coaches placed Plaintiff in further danger by insisting that not only would they not help Plaintiff escape the sexual harassment and bullying from Defendant Dawson, but also that Plaintiff himself must engage in violence against Defendant Dawson in order for the abuse to end.

147.     As a direct and proximate result of the negligence of the Coaches, Plaintiff has sustained and continues to sustain physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern.

148.     Plaintiff is entitled to an award of compensatory damages, attorneys' fees, costs, and interest against Defendants, each of them collectively or separately and severally.

**COUNT VIII**
**Intentional Infliction of Emotional Distress**
(Defendants Dawson, Blackmon, Brown,
and Smith in their individual capacities)

149.     Defendant Dawson and the Coaches intended to inflict emotional distress or knew or should have known that emotional distress was likely to result from their conduct.

150.     The conduct of Defendant Dawson and the Coaches was extreme and outrageous and utterly intolerable in a civilized society.

151.     The Defendants' actions caused Plaintiff to suffer emotional distress so severe that no reasonable person could be expected to endure it. As a direct and proximate result of the negligence of these Defendants, Plaintiff has sustained and continues to sustain physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern.

152.     Plaintiff is entitled to an award of compensatory damages, attorneys' fees, costs, and interest against Defendants, each of them collectively or separately and severally.

## COUNT IX
## Battery/Assault
(Defendant Dawson)

153.    Defendant Dawson committed an intentional touching, and/or threat of same, to Plaintiff in a rude, angry, or violent manner under such circumstances that said touching created in Plaintiff a well-founded fear of an imminent battery.

154.    At the time of the touching, and/or threat of same, Defendant Dawson had the ability and opportunity to consummate the offense.

155.    As a direct and proximate result of Defendant Dawson's behavior, Plaintiff has sustained and continues to sustain physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern.

156.    Plaintiff is entitled to an award of compensatory damages, attorneys' fees, costs, and interest against Defendant Dawson.

## COUNT X
## Recklessness/Wantonness
(Defendant Dawson)

157.    Defendant Dawson owed a duty to Plaintiff to act in a reasonably prudent manner when attending school at Troy University and to act responsibly towards his fellow students.

158.    Defendant Dawson recklessly and/or wantonly breached his duty to Plaintiff by continuously and repeatedly sexually harassing and assaulting him.

159.    As a direct and proximate result of the negligence of these Defendants, Plaintiff has sustained and continues to sustain physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma, and concern.

160.    Plaintiff is entitled to an award of compensatory damages, attorneys' fees, costs, and interest against Defendant Dawson.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff John Haynes requests the relief:

a. An Order declaring that the conduct engaged in by the Defendants to be in violation of Plaintiff John Haynes' rights under federal and Alabama law;

b. Compensatory damages against the Defendants, in an amount that will fully compensate him for the physical injuries, mental distress, anguish, pain, humiliation, embarrassment, suffering, and concern that he has suffered as a direct and/or proximate result of the statutory and common law violations as set out herein;

c. A judgment against all Defendants for such punitive damages as will properly punish them for the constitutional, statutory, and common law violations perpetrated upon Plaintiff John Haynes as alleged herein, in an amount that will serve as a deterrent to Defendants and others from engaging in similar future conduct;

d. Prejudgment and post-judgment interest at the highest rates allowed by law;

e. Costs, expert witness fees, and reasonable attorneys' fees;

f. An order maintaining jurisdiction over this matter to ensure compliance with the terms of the Orders requested herein;

g. Such other and further relief, including equitable, that this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

Date: July 25, 2022

/s/   J. Curt Tanner
J. Curt Tanner, Esq.
Adam W. Pittman, Esq.
Julianne Z. Boydstun, Esq.
*Attorneys for Plaintiff*

**OF COUNSEL:**
CORY WATSON, P.C.
2131 Magnolia Ave S.
Birmingham, Alabama 35205
Telephone: (205) 328-2200

Facsimile: (205) 328-7896
ctanner@corywatson.com
apittman@corywatson.com
jboydstun@corywatson.com

**TO CLERK: PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

**TROY UNIVERSITY**
111 Adams Administration Building
Troy, Alabama 36082

**BRIAN BLACKMON**
1706 Tiverton Street
Winter Springs, Florida 32708

**DAYNE BROWN**
423 Grace Road
Troy, Alabama 36081

**JAMAAL SMITH**
133 Prospect Ridge Road
Troy, Alabama 36079

**DEFENDANTS TO BE SERVED BY PRIVATE PROCESS SERVER:**

**JACK STOCKDALE DAWSON**
c/o Jacksonville State University
700 Pelham Road North
Jacksonville, Alabama 36265

*/s/   J. Curt Tanner*
J. Curt Tanner, Esq.